# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Valeriya Slyzko,

     Plaintiff

v.

Equifax Information Services LLC; Experian Information Solutions, Inc.; and Transunion, LLC,

     Defendants

Case No.: 2:19-cv-00176-JAD-EJY

**Order (1) Denying as Moot Motion to Stay Proceedings, (2) Granting in Part Motion to Dismiss, (3) Granting in Part Motion to Strike Class Allegations, and (4) Granting Motion for Leave to Submit Supplemental Authority**

[ECF Nos. 27, 41, 43, 63]

Valeriya Slyzko[1] sues consumer reporting agency Experian Information Services, Inc., claiming that Experian violated its duties to disclose under the Fair Credit Reporting Act (FCRA) and Nevada's consumer-reporting scheme.[2] She also contends that Experian failed to use FCRA-mandated reasonable procedures to ensure the maximum accuracy of information that it reported on her. And she seeks to pursue a FCRA failure-to-disclose claim and a FCRA failure-to-use-reasonable-procedures claim on behalf two classes of consumers.

Experian moves to stay this case pending final judgment in another case, to dismiss all of Slyzko's claims with prejudice and without leave to amend, and to strike her class allegations.[3] Slyzko moves to supplement her response to Experian's dismissal motion with new authority from the Ninth Circuit.[4] For the reasons discussed below, I deny the motion to stay, I grant in

---

[1] Counsel recently filed notice that Slyzko has passed away. ECF No. 64. If Slyzko's claims are not extinguished, FRCP 25(a) affords her successor or representative 90 days from the date of service of the suggestion of death to move to substitute in her place.

[2] *See generally* ECF No. 19 (first-amended complaint).

[3] ECF Nos. 27, 28 (to stay and corrected image), 41 (to dismiss), 43 (to strike).

[4] ECF No. 63. Slyzko does not seek leave to submit further briefing.

part the motion to dismiss, I grant in part the motion to strike class allegations, and I grant the motion to submit supplemental authority. The upshot is that I construe each alleged violation as its own claim for relief, permit Slyzko to proceed without amendment on one claim, grant her leave to amend six others, and dismiss with prejudice her remaining three claims.

## I.     Motion to stay [ECF Nos. 27, 28 (corrected image)]

Experian moves to stay this case pending final judgment in a different case in this district, contending that case "involves some of the same [potential] class members and substantially similar issues" as this case.[5] The similar case is styled *Leoni v. Experian Information Solutions, Inc.* and is pending before U.S. District Judge Richard F. Boulware, II.[6] In the time since Experian filed its motion to stay this case, Judge Boulware resolved in *Leoni*, among other things, cross-motions for summary judgment and a motion for class certification.[7] The plaintiff in *Leoni*, who had more losses than wins, appealed Judge Boulware's orders to the Ninth Circuit.[8] That appeal is still pending. Because Experian moved to stay this case pending Judge Boulware's final judgment in *Leoni*, and that seems to have occurred, I deny its motion as moot.

## II.    Motion to Dismiss [ECF No. 41]

### A.     Legal standard for dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[9] While Rule 8 does not

---

[5] ECF No. 28 at 3.

[6] *Leoni v. Experian Info. Sols., Inc.*, No. 2:17-cv-01408 (D. Nev. case docketed May 18, 2017).

[7] *Id.* at ECF Nos. 129, 130 (order and amended order entered Sept. 26, 2019).

[8] *Id.* at ECF No. 131 (notice of appeal filed Oct. 28, 2019).

[9] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[10] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[11] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[12]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[13] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[14] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[15] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[16] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[17]

---

[10] *Twombly*, 550 U.S. at 570.

[11] *Iqbal*, 556 U.S. at 678.

[12] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[13] *Iqbal*, 556 U.S. at 678–79.

[14] *Id.*

[15] *Id.* at 679.

[16] *Id.*

[17] *Twombly*, 550 U.S. at 570.

## B.    Factual allegations

I begin by identifying some of the well-pled factual allegations in Slyzko's first-amended complaint that are entitled to the assumption of their truth. Because several of Slyzko's claims concern her Chapter 13 bankruptcy discharge and her debt to Ditech Financial, LLC, I focus on those allegations here. Slyzko pleads limited information about her Chapter 13 bankruptcy case, which is styled *In re: Akers & Slyzko* and was pending in the U.S. Bankruptcy Court for the District of Nevada.[18] I take judicial notice of the record in Slyzko's Chapter 13 bankruptcy case, which reflects that Slyzko, as a joint debtor with her husband, voluntarily filed a petition under Chapter 13 of the Bankruptcy Code on September 30, 2010.[19] The bankruptcy court entered an order confirming the debtors' second Chapter 13 plan on January 10, 2011.[20] The bankruptcy court granted the debtors a discharge on July 30, 2015, after they completed their Chapter 13 plan.[21] The Chapter 13 Trustee entered her final report and account on August 6, 2015, providing the details of the case and how it was resolved, including what disbursements were made to creditors.[22] The final decree discharging the Chapter 13 Trustee and closing Slyzko's bankruptcy case was entered on August 10, 2015.[23] None of the judicial records in Slyzko's bankruptcy case that I reviewed mention that she owed a debt to Ditech.

---

[18] *In re Akers & Slyzko*, No. 10-28573, at ECF No. 1 (Bankr. D. Nev. case docketed on Sept. 30, 2010).

[19] *Id.*

[20] *Id.* at ECF No. 31.

[21] *Id.* at ECF No. 78.

[22] *Id.* at ECF No. 80.

[23] *Id.* at ECF No. 81.

Slyzko alleges that, on June 18, 2018, Experian provided her a document that she concludes is both a consumer disclosure and a consumer report.[24] The document "contained a list of inquiries shared both with others ('Hard Inquiries') and those purportedly only shared with [her] ('Soft Inquiries')."[25] The document informed Slyzko that Experian "'offer[s] credit information about you to those with a permissible purpose . . . .'"[26] The document "contained address information for" Slyzko and identified the sources of that information "through cryptic, numeric codes . . . ."[27] The document informed Slyzko that Experian "'store[s] address information as it is sent to [Experian] by [her] credit grantors or from information contained in public records.'"[28] Experian disclosed the source of this address information "through . . . unrecognizable numeric codes[,]" only two of which "were associated with a particular furnisher . . . ."[29] The document also included a "list of names," but "Experian provided no explanation of what source corresponded to its 'name identification number[s]' at all."[30]

Slyzko alleges that the document "demonstrated that at least seven non-Experian entities procured [her] consumer reports during the [preceding] two-year period . . . ."[31] The document also reflected that Slyzko "had a number of open accounts with other third parties, including

---

[24] ECF No. 19 at ¶ 24 (alleging that a single document was simultaneously a "Section 1681g consumer disclosure, a Section 1681i consumer report, and an NRS 598C consumer disclosure and consumer report"). As this is a conclusion, it is not entitled to the assumption of its truth.

[25] *Id.* at ¶ 26.

[26] *Id.* at ¶ 30.

[27] *Id.* at ¶ 45.

[28] *Id.* at ¶ 46.

[29] *Id.*

[30] *Id.* at ¶ 47.

[31] *Id.* at ¶ 53.

Ditech Financial LLC, Navy Federal Credit Union, and True Sky Credit Union."[32]  Slyzko alleges that the document "inaccurately reported that a tradeline from Ditech Financial LLC . . . [w]as 'included' in her Chapter 13 bankruptcy on October 15, 2015, which was *after* the date of [p]laintiff's Chapter 13 bankruptcy discharge."[33]  "The account was included in a section of her disclosure indicating 'accounts that may be considered negative,' in which Experian explained that most derogatory debts 'may remain on the credit report for up to seven years.'"[34]  The document also stated that "the Ditech [t]radeline would continue reporting until October of 2022—i.e., seven years after the month that the account had been incorrectly 'included' in bankruptcy."[35]  Slyzko alleges that Ditech's tradeline was the "only negatively reporting account" on the document because her "bankruptcy had already aged off of her credit report."[36] She also alleges that, "[i]n an April 13, 2016[,] disclosure, Experian previously and correctly reported [her] Chapter 13 bankruptcy as 'filed' in September 2010 and 'discharged' in July 2015."[37]

It is important to note what's missing from the first-amended complaint.  Slyzko makes vague and passing references to "disputed addresses[,]"[38] but she does not allege that any of the addresses or names that Experian listed for her were wrong.  She does not allege that she disputed any of the information listed on the document with Experian or anyone else.  Slyzko

---

[32] *Id.*

[33] *Id.* at ¶ 61.

[34] *Id.*

[35] *Id.*

[36] *Id.* at ¶ 62.

[37] *Id.* at ¶ 61.

[38] *Id.* at ¶¶ 46, 48.

also does not allege that she requested either or both a consumer disclosure or consumer report from Experian. Nor does she allege details about any such request. And Slyzko does not allege any details about the Ditech debt that she contends Experian wrongly listed as being "included" in her bankruptcy after the date of her discharge. I address these pleading deficiencies below in resolving Experian's dismissal arguments.

### C.    Discussion

Slyzko alleges that Experian violated two different sections of the FCRA (15 U.S.C. §§ 1681g and 1681e) and one provision of Nevada's consumer-reporting scheme (NRS § 598C.130).[39] This basic and necessary information is not readily apparent from simply reading Slyzko's first-amended complaint, which is so disjointed that this reader was forced to create her own document to track the allegations and understand what claims were being alleged. Confusingly, Slyzko's four claims for relief merely refer to the FCRA and NRS Chapter 598C generally, don't include any supporting factual allegations, and contain only a few elements each.[40] For the sake of clarity, I refer to each individual alleged violation as a separate claim for relief[41] and I begin with the claims alleging a failure to disclose.

### 1.    *Failure-to-disclose claims under FCRA § 1681g and NRS § 598C.130*

FCRA § 1681g(a) requires a consumer reporting agency to, "upon [the] request" of a consumer who furnishes proper identification, "clearly and accurately" disclose six categories of information.[42] Relevant here are the categories of information that a reporting agency must

---

[39] *See generally* ECF No. 19.

[40] *See id.* at 32–34 (setting forth four claims for relief, the last of which is incorrectly labeled as the third one).

[41] Plaintiff would be wise to follow suit when amending her pleading in this case.

[42] 15 U.S.C. §§ 1681g(a), 1681h(a)(1).

provide under the first three paragraphs of § 1681g(a): (1) all of the information that is in the consumer's file at the time of her request; (2) the sources of that information; and (3) the identification of each person who procured a consumer report for either "employment purposes, during the 2-year period preceding the date" of the request or "for any other purpose, during the 1-year period preceding the date" of the request.[43]

NRS § 598C.130 similarly requires a consumer reporting agency to "clearly and accurately disclose to the consumer the nature and substance of the consumer report in its files [that] relates to him or her at the time of the request, and disclose the names of the institutional sources of information."[44] Nevada's statute also requires a reporting agency to provide the consumer a copy of his or her consumer report, if requested, and the name of each person who received information about the consumer from the reporting agency "[w]ithin the preceding 2 years for purposes of employment" or "[w]ithin the preceding 6 months for any other purpose."[45]

### a. Information in the consumer's file

Section 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request" save for full identification numbers and "information concerning credit scores or any other risk scores or predictors relating to the consumer."[46] "A consumer's file includes 'all information on the consumer that is recorded and retained by a [consumer reporting agency] that might be furnished, or has been furnished, in a consumer report

---

[43] *Id.* at §§ 1681g(a)(1)–(3)(A)(ii).

[44] Nev. Rev. Stat. § 598C.130(1).

[45] *Id.* at §§ 598C.130(1)–(2).

[46] 15 U.S.C. § 1681g(a)(1)(A)–(B).

on that consumer.'"[47]  Slyzko claims that Experian failed to properly disclose four items of information in her file: (1) behavioral data, (2) uses of information that were not permissible under the FCRA, (3) when and why each soft inquiry was made, and (4) that her Ditech debt had been reported as "included" in her bankruptcy case after the date of her bankruptcy discharge.

### i.    Behavioral data

Slyzko contends that Experian failed to disclose the behavioral data that it recorded and maintained in her consumer's file.[48]  She alleges that Experian "amasses and maintains" consumers' behavioral data, like household income; purchase, employment, and education history; residence type; and whether the consumer "is a 'dog' or 'cat' person."[49]  She asserts that Experian compiles this information in a "marketing database" called "ConsumerView," which it uses for credit products and services that it sells like "OmniView," "TrueTouch," and "Collection Advantage."[50]  Slyzko pleads inconsistent assertions that Experian's attorneys have made in other cases to show that it is plausible that information in the ConsumerView database is recorded and retained by this defendant, not some other member of its corporate-family tree.

She alleges that Experian has maintained the ConsumerView database since 1998 and has touted that its "TrueTouch" credit product contains "the 'freshest' data on 'more than 300

---

[47] *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d Cir. 2010)).

[48] ECF No. 19 at ¶¶ 33–40.  "The term 'file,' when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g).

[49] *Id.* at ¶ 33.

[50] *Id.* at ¶¶ 33–35.

million individuals[.]'"[51] Based on these facts, Slyzko alleges that she is informed and believes that "Experian's TrueTouch database contained information" about her.[52]

Slyzko next alleges that "[i]nformation from these behavioral databases can be included on a consumer report" because Experian "sells a suite of services called "collection advantage" that "permit the user to combine data from Experian's File One" and "MetroNet" databases.[53] She contends that, "[a]ccording to Experian, the MetroNet 'core' database contains 'demographic information from INSOURCE, the nation's largest repository of consumer marketing demographic data.'"[54] Slyzko later asserts that Experian uses the behavioral data in its File One database to form credit scores.[55]

Experian argues that Slyzko lacks Article III standing to assert this claim because she has speculated, but not shown, that she suffered a concrete injury, i.e., that Experian failed to disclose behavioral data that it collected and maintained about her that might be furnished, or has been furnished, in a consumer report on her.[56] The Ninth Circuit explained the standard for determining constitutional standing at the dismissal stage in *Maya v. Centex Corporation*.[57] "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the

---

[51] ECF No. 19 at ¶¶ 33–34.

[52] *Id.* at ¶ 34. Referring to TrueTouch as a database appears to be a typo, however, because the online brochure that Slyzko pleads a link to describes it as a "product." *See* ECF No. 19 at 11, n.22 (citing https://www.experian.com/assets/marketing-services/product-sheets/true-touch.pdf).

[53] *Id.* at ¶ 35.

[54] *Id.*

[55] *Id.* at ¶ 39.

[56] ECF No. 41 at 9.

[57] *Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011).

complaint in favor of the complaining party."[58] "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."[59]

"To survive a motion to dismiss for lack of constitutional standing, [Slyzko] must establish a 'line of causation' between [Experian's] action and [her] alleged harm that is more than 'attenuated.'"[60] As the Seventh Circuit explained in *Gillespie v. Trans Union Corporation*, this "require[s] some showing—aside from the existence of the [disputed item of information] in its file—that [Experian] included similar information in a consumer report in the past or that it plans to do so in the future."[61] Construing the facts in the light most favorable to Slyzko and drawing all inferences in her favor, I cannot conclude that she has plausibly alleged that Experian has furnished behavioral data in a consumer report or plans to do so in the future.

The problem is that Slyzko does not link the ConsumerView database that she alleges contains her behavioral data to any consumer report that Experian prepared on her—or even consumer reports generally. Paragraph 35 of the first-amended complaint appears to be intended to serve as a bridge between ConsumerView on the one hand and consumer reports on the other, but other than the bald speculation that "[i]nformation from these databases can be included on a

---

[58] *Id.* at 1068 (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[59] *Id.* (internal quotation marks and brackets omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

[60] *Id.* at 1070 (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)).

[61] *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (*Gillespie I*); *c.f. Ramirez v. TransUnion, LLC*, — F.3d —, 2020 WL 946973, at *13–14 (9th Cir. Feb. 27, 2020) (explaining that consumers have a concrete informational interest under the FCRA in "being able to monitor their credit reports and promptly correct inaccuracies").

consumer report[,]"[62] Slyzko alleges no facts to show or allow the reasonable inference that is the case. She instead alleges that Experian sells a suite of services called "collection advantage," which she contends pulls from Experian's MetroNet and File One databases, and that MetroNet pulls from Experian's INSOURCE database. But she doesn't allege that her behavioral data is contained in any of those databases. Nor does she allege facts to plausibly show or allow the reasonable inference that any of those products constitute a consumer report.[63]

These pleading defects require dismissal under Rule 12(b)(1) for lack of constitutional standing and under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. But it is not yet clear that these defects cannot be cured by amendment, so Slyzko's claim that Experian violated § 1681g(a)(1) by failing to disclose her behavioral data is dismissed without prejudice and with leave to amend if she can plead true facts to show that Experian has furnished behavioral data in a consumer report or plans to do so in the future.

### ii.     Not-permissible purposes

Slyzko contends that Experian violated § 1681g(a)(1) when it failed to disclose the fact that information in her consumer's file "would . . . be made available for purposes not

---

[62] ECF No. 19 at ¶ 35. The databases alleged here are ConsumerView and the "credit product" called TrueTouch. *Id.* at ¶ 34. Slyzko contends that ConsumerView contains information from TrueTouch, and she is informed and believes that TrueTouch contains her "information." *Id.* Slyzko's allegations about the TrueTouch database suffer from the same infirmities as her allegations about the Consumerview database.

[63] Slyzko's allegation that "Experian has provided this 'behavioral' data to third parties, either directly or indirectly, who in turn sells [sic] the data to third party credit decision-makers[,]" ECF No. 19 at ¶ 36, is too vague to plausibly state that Experian has furnished behavioral data on consumer reports or intends to do so in the future. Slyzko also links this data to credit-scoring models, *id.* at ¶¶ 38–39, but the FCRA expressly provides that "nothing in . . . paragraph [§1681g(a)(1)] shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer." 15 U.S.C. § 1681g(a)(1)(B).

permissible under the FCRA . . . ."[64]  Slyzko does not allege that any of her information was actually used for impermissible purposes.  She speculates that this occurred because Experian generates something called a "Bullseye report," which she contends Experian's expert in another case called "credit information,"[65] and Experian's other expert in a different case confirmed that Experian provides regardless of whether the requestor has a permissible purpose for obtaining it.  But in the interrogatory responses from another case that Slyzko pleads as factual support for this claim,[66] Experian explained that "a Bullseye report only reflects information provided to Experian by the requesting data furnisher.  Only an Experian data furnisher that reports data to Experian can request a Bullseye report, which will only contain trade data reported by the furnisher."[67]  Experian stated in response to another interrogatory, which Slyzko also pleads as factual support for this claim,[68] that it "does not require a subscriber to identify a permissible purpose each time it accesses a Bullseye report, because each subscriber only has access to *its own reported data*."[69]  Experian concluded its interrogatory response by explaining that a "Bullseye report is a data verification tool that provides Experian subscribers with an efficient method to view and verify their own previously reported data for a particular consumer."[70]

Slyzko's allegations thus show that by providing a Bullseye report, Experian allows an information furnisher to review its own data that it has provided to Experian about a consumer.

---

[64] ECF No. 19 at ¶¶ 30–32.

[65] *Id.* at ¶ 31, n.19.

[66] *Id.* at ¶ 31, n.20 (citing *Nichols v. Experian*, No. 2:17-cv-2337, at ECF No. 51-4, pp. 29–31 (D. Nev. Sept. 4, 2018)).

[67] *Nichols*, No. 2:17-cv-2337, at ECF No. 51-4, p. 29.

[68] ECF No. 19 at ¶ 31, n.20.

[69] *Nichols*, No. 2:17-cv-2337, at ECF No. 51-4, p. 31.

[70] *Id.*

Slyzko does not contend that a furnisher's review of the information that it has supplied to a consumer reporting agency is an impermissible use of that information under the FCRA. The viability of any such claim is dubious considering that the FCRA imposes duties on information furnishers to report only accurate information and correct and update the information that they report.[71] By essentially pleading Experian's own statements about the Bullseye report as the facts supporting her claim that Experian failed to disclose that it allowed her information to be used for impermissible purposes, Slyzko has pled herself out of that claim. Because it is wholly speculative and futile even under her own allegations, Slyzko's claim that Experian violated § 1681g(a)(1) by failing to disclose that her information would be made available for not-permissible purposes is dismissed with prejudice and without leave to amend.

### iii.     Soft inquiries

Slyzko contends that Experian violated § 1681g(a)(1) when it failed to disclose "in plain English" "when any soft inquiry was made" and "why each soft inquiry" was made.[72] Experian convincingly argues in its dismissal motion that Slyzko does not allege that Experian has furnished information like soft inquiries on a consumer report or plans to do so in the future, and other courts have acknowledged that Experian simply does not share soft inquires with third parties.[73] Slyzko alleges that soft inquiries are "purportedly" shared only with the consumer and she pleads no facts to show otherwise.[74] Slyzko's claim that Experian violated § 1681g(a)(1) by failing to disclose when and why each soft inquiry was made is dismissed without prejudice and

---

[71] 15 U.S.C. §§ 1681s-2(a)(1)(A), (a)(2)(A)–(B).

[72] ECF No. 19 at ¶¶ 27–29.

[73] ECF No. 41 at 7.

[74] *Compare* ECF No. 19 at ¶ 26, *with id.* at ¶¶ 27–29,

with leave to amend if she can plead true facts to plausibly show that Experian has furnished soft

inquiries on a consumer report or plans to do so in the future.

### iv.     *Included-in-bankruptcy date*

Slyzko contends that Experian violated § 1681g(a)(1) when it disclosed that her debt to

Ditech was "'included' in her Chapter 13 bankruptcy on October 15, 2015, which was *after* the

date of [her] Chapter 13 bankruptcy discharge."[75]  Slyzko contends that this disclosure is neither

clear nor accurate because it infers that her debt didn't receive the benefit of her July 30, 2015,

bankruptcy discharge.  But Slyzko does not allege, and she pleads no facts to show, that her

Ditech debt was among those discharged in her bankruptcy case.  I cannot reasonably infer that

this debt was discharged because the judicial records in her bankruptcy case don't mention

Ditech and Slyzko does not plead even basic details about her debt to that entity.  Slyzko's claim

is dismissed for this reason alone.  I now consider whether leave to amend is warranted.

Slyzko's allegation that Experian disclosed factually incorrect information misses the

mark.[76]  Section 1681g(a)(1) requires consumer reporting agencies to provide a clear and

accurate disclosure of all information in the consumer's file, not a clear disclosure of only the

accurate information in the file.[77]  To the extent that Slyzko seeks to hold Experian liable under

§ 1681g(a)(1) for disclosing factually incorrect information that's in her consumer's file, she

does not allege a colorable claim under this statute.

---

[75] ECF No. 19 at ¶¶ 61, 69, 91, 93, 99.

[76] Slyzko does not content that Experian's disclosure was inaccurate in the sense that Ditech reported something different to Experian, i.e., that Experian gave her an inaccurate picture of what was in its file.

[77] 15 U.S.C. § 1681g(a)(1) (consumer reporting agencies must "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request").

What remains of this claim is Slyzko's allegation that the included-in-bankruptcy date is an unclear item of information. Experian argues that this theory is futile because Slyzko does not allege that she herself was confused by Experian's disclosure, but, rather, that she understood it to convey that her Ditech debt was not discharged in July 2015 but three months later.[78] Relying on the Ninth Circuit's decision in *Shaw v. Experian Information Solutions, Inc.*, Slyzko responds that the test for whether a disclosure violates § 1681g is an objective one: whether the disclosure is "clear and comprehensible to the average consumer."[79] So, Slyzko is correct that the standard for confusion is an objective one, but she herself must have failed to comprehend Experian's disclosure to have standing to state a claim for relief under § 1681g(a)(1).[80] Slyzko does not allege that she was confused or that the disclosure was unclear to her. In fact, Slyzko alleges that she was able to compare this item of information with Experian's previous reports and her own knowledge of her bankruptcy and conclude that the included-in-bankruptcy date was factually wrong.[81]

As the Seventh Circuit explained in *Gillespie v. Equifax Information Services, LLC*, "a primary purpose[ ] of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established in § 1681i."[82] Because Slyzko expressly contends that Experian's disclosure allowed her to identify inaccurate information in her credit

---

[78] ECF No. 41 at 13–14.

[79] ECF No. 46 at 13 (internal quotation marks omitted) (quoting *Shaw*, 891 F.3d at 760).

[80] *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (explaining that, "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'").

[81] ECF No. 19 at ¶ 59–62.

[82] *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (*Gillespie II*).

file, she cannot state a colorable claim that it was unclear or incomprehensible and thus violated § 1681g(a)(1).  Experian has therefore demonstrated that amendment would be futile here.

### b.  *Sources of the information in the consumer's file*

Section 1681g(a)(2) provides that every consumer reporting agency must, upon the consumer's request and with limited exceptions that are not relevant here, "clearly and accurately disclose to the consumer" "[t]he sources of the information" that is contained in their consumer's file.  Slyzko contends that Experian violated § 1681g(a)(2) when it failed to adequately disclose "in plain English" the sources for her name and address information in her consumer's file.[83] She further contends that Experian disclosed this information using "cryptic, numeric codes [that] deprived [her] of any ability to determine [the information's] accuracy or "dispute inaccurate information."[84]  Experian argues that this claim fails for three reasons: (1) Slyzko does not allege that she requested this information from Experian; (2) Slyzko fails to allege that she suffered any harm as a result of Experian's failure to disclose this information; and (3) Slyzko's claim that she could not understand the codes provided is "implausible" because she doesn't allege that the asked Experian for clarification.[85]

Slyzko parries Experian's first argument by pointing out that the form that Experian provides for consumers to request a free copy of the information in their consumer's file does not contain a separate means for the consumer to request the sources of that information.[86]  Slyzko provides an example of that form,[87] but she neither alleges nor argues that she used that form (or

---

[83] ECF No. 19 at ¶ 45.

[84] *Id.* at ¶¶ 45, 48.

[85] ECF No. 41 at 11–12.

[86] ECF No. 46 at 20.

[87] ECF No. 46-4 at 2.

17

something similar) when she requested her information from Experian. This, however, is a distinction without a difference at this stage because it can be reasonably inferred from Slyzko's uncontested allegation that Experian provided the sources for her name and address information on the June 18, 2018, disclosure that Experian understood she had requested that information.

Experian's two remaining arguments fare no better. Experian's duty to disclose this information "in a form that was both clear and accurate"[88] arose in the first instance, not only after Slyzko asked Experian to clarify the unexplained codes that it provided to her.[89] Finally, Slyzko does allege that she was harmed by Experian's failure to clearly disclose these information sources: it frustrated her ability to contact the sources to dispute the information.[90] Thus, Slyzko may proceed on her claim that Experian violated § 1681g(a)(2) when it failed to disclose the sources of her name and address information in plain English.

### c.  *Procurers of consumer reports*

Slyzko alternatively alleges that, if it is determined that Experian does not "store" her behavioral data itself, then it violated § 1681g(a)(3)'s and NRS § 598C.130(2)(b)'s requirements that it disclose the identity of all persons who procured her consumer report, because the document it provided her did not include any soft inquiries corresponding with the transmission

---

[88] *Shaw*, 891 F.3d at 759 (internal quotation marks and brackets omitted) (quoting 15 U.S.C. § 1681g(a)).

[89] Slyzko pleads that two codes were clear enough because she could match each one to a specific furnisher. ECF No. 19 at ¶ 46. But she could not decipher the remaining three codes or match them to a specific furnisher. *Id.*

[90] *Id.* The Ninth Circuit recently explained in *Ramirez* that consumers have a concrete informational interest under the FCRA of "being able to monitor their credit reports and promptly correct inaccuracies." *Ramirez*, 2020 WL 946973, at *13–14.

of her behavioral data to any third party.[91]  Experian argues that these claims make no sense[92]—and it's right.

Slyzko explains in response to Experian's dismissal motion that these claims concern the "transmission of information from Experian to a third party" like "Experian Marketing . . . ."[93]  I understand these claims to alternatively allege that Experian collected Slyzko's behavioral data but did not store it; rather, Experian transmitted that data to a third party like Experian Marketing.  The transmission of data from Experian to a third party would be a soft inquiry.  With this understanding and for the reasons discussed above in section II(C)(1)(a)(iii), I dismiss Slyzko's alternative claims without prejudice and with leave to amend if she can plead true facts to plausibly show that Experian has furnished soft-inquiry information on a consumer report or plans to do so in the future.

### 2. *Failure-to-use-reasonable-procedures claims under FCRA § 1681e(b)*

Slyzko contends that Experian violated its duty under § 1681e(b) to use reasonable procedures to ensure the maximum accuracy of the information in its consumer reports when it reported that her Ditech debt had an included-in-bankruptcy date that fell after her bankruptcy discharge.[94]  But Slyzko does not plausibly allege that this information was inaccurate for the FCRA's purposes because she pleads no facts about this debt and Ditech is not listed on the judicial records from her bankruptcy case that I have reviewed.  She also does not plausibly

---

[91] *Id.* at ¶¶ 41–43.  It is not clear if Slyzko intended to plead these violations in the alternative because none of her claims for relief is plead in that manner, *see id.* at ¶¶ 118–132 (vaguely alleging a few of the elements for Slyzko's four claims for relief), but she pleads these claims "alternatively" in the fact section of her first-amended complaint. *Id.* at ¶¶ 41, 42.

[92] ECF No. 41 at 11.

[93] ECF No. 46 at 18.

[94] ECF No. 19 at ¶¶ 92, 94.

allege that Experian furnished this information in a consumer report on her. Nor does she plausibly allege that Experian makes this information available to third parties. And I am not persuaded by Slyzko's theory that everything in her consumer's file is at risk of dissemination because Experian's procedures and the FCRA permits consumers to direct consumer reporting agencies to send a post-reinvestigation consumer report to third parties.[95] Slyzko's claim that Experian violated § 1681e(b) is therefore dismissed without prejudice and with leave to amend if she can plead true facts to show that Experian furnished an inaccurate post-discharge included-in-bankruptcy date for her Ditech account in a consumer report on her.

### 3. *Willfulness and actual-damage allegations*

Slyzko contends that Experian's violations were either willful or negligent, and she pleads that she "incurred actual damages, including but not limited to lost time in considering these reporting issues" and harm to her creditworthiness.[96] Experian argues that Slyzko's willfulness allegations are not sufficiently pled, her time-lost damage is not recoverable as a matter of law, and her creditworthiness allegations are purely speculative.[97] I address these arguments only in the context of Slyzko's claim under § 1681g(a)(2) about failing to disclose the sources of her name and address information, because I have dismissed her other claims.

. . .

. . .

. . .

---

[95] The main stumbling block in Slyzko's theory is the fact that what Experian would be furnishing to a third party is the consumer's dispute about an item of information in her file and the results of the reinvestigation of that dispute, not the disputed item of information itself devoid of any explanation or context.

[96] ECF No. 19 at ¶¶ 53, 95–96.

[97] ECF No. 41 at 23–25.

### a.  *Willfulness allegations*

A willful violation of the FCRA concerns acts that are done knowingly or in reckless disregard for the FCRA's requirements.[98]  "[W]illfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the Act.'"[99]  "A party does not act in reckless disregard of the FCRA 'unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.'"[100] "Conditions of a person's mind may be alleged generally" at the pleading stage.[101]  For a willful violation, a plaintiff may recover punitive damages, reasonable costs and fees, and either actual or statutory damages.[102]  For a negligent violation, however, a plaintiff may recover only actual damages and reasonable costs and fees.[103]

Slyzko alleges that Experian's conduct was willful because it "knows the types of credit information [that] it offers to third parties; knows the sources of its information; knows how it stores 'behavioral' data or, alternatively, the persons who have accessed that data; and has complete control over the format and presentation of its consumer disclosures."[104]  These vague offerings are not sufficient to state a claim of willful or reckless violation.  She also alleges that

---

[98] *Safeco Ins. Co. of Am. v. Geico Gen. Ins. Co.*, 551 U.S. 47, 56–60 (2007).

[99] *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco*, 551 U.S. at 56–57).

[100] *Id.* (quoting *Safeco*, 551 U.S. at 69).

[101] Fed. R. Civ. P. 9(b).

[102] 15 U.S.C. § 1681n.

[103] *Id.* at § 1681o.

[104] ECF No. 19 at ¶ 51.

the statutory requirements were "clear and explicit, and Experian's pattern of conduct recklessly disregarded them."[105]  This, too, is deficient.

But Slyzko further alleges that § 1681g(a)(2) "unequivocally requires disclosure of the source of information" and that Experian must convey that information to the consumer in a clear and accurate manner.[106]  She describes what Experian disclosed for the sources of her name and address information—mere numeric codes, most of which she could not match to specific furnishers.  And Slyzko pleads that the Ninth Circuit in *Shaw v. Experian* adopted Experian's argument that it did not have to provide the "bits and bytes" of its internal codes to clearly and accurately convey information to a consumer.[107]  With this last burst of information, Slyzko has sufficiently alleged that Experian willfully violated § 1681g(a)(2) when it failed to disclose the sources of her name and address information in plain English.

### b.    *Actual-damage allegations*

Experian argues that Slyzko has not plausibly shown that her creditworthiness took a hit because she fails to allege that any third party actually accessed her consumer report.[108]  Experian is mistaken as Slyzko expressly contends that the June 18, 2018, disclosure reflects that "at least seven non-Experian entities procured [her] consumer reports" during the preceding two years.[109]  This alleged harm is sufficiently pled.

Slyzko also contends that she was harmed because she lost time considering Experian's disclosure violations.  This alleged harm fails because it is vague and unsupported by any factual

---

[105] *Id.* at ¶ 52.

[106] *Id.* at ¶ 49.

[107] *Id.*

[108] ECF No. 55 at 11.

[109] ECF No. 19 at ¶ 96.

allegations. It also fails because Slyzko provides no authority to support her contention that this harm is compensable under the FCRA. The Ninth Circuit has recognized that lost wages from time spent dealing with credit problems is recoverable under the FCRA.[110] It has also recognized that actual damages can include "recovery for emotional distress and humiliation."[111] But Slyzko pleads none of these facts. Her lost-time allegation is therefore dismissed without prejudice and with leave to amend if she can plead true facts to remedy this deficiency.[112]

## III. Motion to strike class allegations [ECF No. 43]

Slyzko seeks to represent two different classes of consumers. The first proposed class alleges a failure-to-disclose claim under § 1681g(a)(1) and consists of consumers who filed for Chapter 7 or 13 bankruptcy, included an account in their bankruptcy petition that was discharged in their bankruptcy, and for whom Experian reported at least one debt with a post-discharge bankruptcy-inclusion date.[113] The second proposed class alleges a failure-to-use-reasonable-procedures claim under § 1681e(b) and consists of consumers who obtained a Chapter 7 or 13 bankruptcy discharge since October 1, 2017, and have been the subject of a post-bankruptcy discharge consumer report wherein Experian reported at least one debt with a post-discharge file or inclusion date.[114] Experian moves to strike Slyzko's class allegations, arguing, among other

---

[110] *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1173–74 (9th Cir. 2009).

[111] *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

[112] In determining the issues raised in Experian's dismissal motion, I considered the Ninth Circuit's recent decision in *Ramirez v. TransUnion, LLC*—the "new, controlling authority" that Slyzko moves to supplement the record with. ECF No. 63 at 2 (citing *Ramirez v. TransUnion, LLC*, — F.3d —, 2020 WL 946973 (9th Cir. Feb. 27, 2020)). There is some overlap between Slyzko's claims and the claims alleged in *Ramirez*, but the facts in *Ramirez* are so materially distinguishable from the facts alleged here that the Ninth Circuit's ultimate holdings in that case are not of much use to Slyzko.

[113] ECF No. 19 at ¶ 100.

[114] *Id.* at ¶ 102.

things, that because she cannot state these claims on behalf of herself, she also cannot state them on behalf of others.[115]

I dismissed with prejudice Slyzko's individual claim alleging that Experian violated § 1681g(a)(1) when it disclosed that her Ditech debt was included in bankruptcy after the date of her bankruptcy discharge. I dismissed without prejudice and with leave to amend Slyzko's individual claim alleging that Experian violated § 1681e(b) when it included the same information in a consumer report on her. Because her individual claims for these forms of relief have been dismissed, Slyzko is not a member of the classes of consumers whom she seeks to represent, and she cannot assert claims on behalf of those proposed class members.[116] Thus, her class claim under §1681g(a)(1) is dismissed with prejudice and her class claim under § 1681e(b) is dismissed without prejudice and with leave to amend if she can plead true facts to show that she is a member of that class, i.e., that Experian furnished a post-discharge included-in-bankruptcy date in a consumer report on her. I need not and do not reach Experian's other arguments for striking Slyzko's class allegations. Experian may reurge those arguments if Slyzko amends her class claim under § 1681e(b).

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Experian's motion to stay this case **[ECF Nos. 27, 28 (corrected image)] is DENIED**.

IT IS FURTHER ORDERED that Experian's motion to dismiss Slyzko's claims **[ECF No. 41] is GRANTED in part**:

---

[115] ECF No. 43.

[116] *See* Fed. R. Civ. P. 23(a) (providing that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" they demonstrate numerosity, commonality, typicality, and fair and adequate representation).

• Slyzko's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose not-permissible uses and a post-discharge bankruptcy-inclusion date, are dismissed with prejudice and without leave to amend;

• Slyzko's claims under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose her behavioral data and soft-inquiry information, are dismissed without prejudice and with leave to amend;

• Slyzko's alternative claims under 15 U.S.C. § 1681g(a)(3) and NRS 598C.130, alleging that Experian failed to disclose the soft inquiries related to her behavioral data, are dismissed without prejudice and with leave to amend;

• Slyzko's claim under 15 U.S.C. § 1681e(b), alleging that Experian failed to use reasonable procedures, is dismissed without prejudice and with leave to amend; and

• Slyzko's actual-harm allegations are dismissed without prejudice and with leave to amend.

Experian's dismissal motion is **DENIED** in all other respects.

IT IS FURTHER ORDERED that Experian's motion to strike class allegations **[ECF No. 43] is GRANTED** in part:

• Slyzko's class claim under 15 U.S.C. § 1681e(b), alleging that Experian failed to use reasonable procedures, is dismissed without prejudice and with leave to amend;

• Slyzko's class claim under 15 U.S.C. § 1681g(a)(1), alleging that Experian failed to disclose information, is dismissed with prejudice and without leave to amend.

Experian's motion to strike class allegations is **DENIED without prejudice** in all other respects.

IT IS FURTHER ORDERED that the time to file a second-amended complaint curing the deficiencies outlined in this order is **TOLLED** until ten days after Slyzko's successor or

representative is permitted, upon timely motion, to substitute in her place. Failure to timely amend after substitution will result in this case proceeding only on Slyzko's claim under § 1681g(a)(2), alleging that Experian willfully failed to disclose the sources of her name and address information in plain English.

IT IS FURTHER ORDERED that Slyzko's motion for leave to submit new authority without further briefing **[ECF No. 63] is GRANTED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 23, 2020